## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELENA BUGAEVA, RACHEL OLIVER, and CATHERINE SVOBODA, *individually and on behalf of all others similarly situated*, | Case No. 1:24-cv-10001-VSB |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| HIGHGATE HOTELS, L.P., | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................................... 2

    A.      Background ...................................................................................................... 2

    B.      Procedural History .......................................................................................... 3

III.    SETTLEMENT TERMS ............................................................................................ 4

    A.      The Settlement Class ....................................................................................... 4

    B.      Settlement Benefits ......................................................................................... 4

        1.      Documented Monetary Losses .............................................................. 5

        2.      *Pro Rata* Cash Payments ...................................................................... 5

    C.      Settlement Administration ............................................................................... 5

    D.      Notice to Settlement Class Members ............................................................... 6

    E.      Opt-Outs .......................................................................................................... 6

    F.      Objections ........................................................................................................ 7

    G.      Attorneys' Fees and Service Awards ............................................................... 8

    H.      Release of Claims ............................................................................................ 8

IV.     LEGAL STANDARD ................................................................................................ 8

V.      ARGUMENT ............................................................................................................. 9

    A.      The Settlement Satisfies the Criteria for Preliminary Approval. ......................... 10

        1.      The Plaintiffs and Class Counsel adequately represented the Class. ......... 10

        2.      The Settlement is the product of arm's-length negotiations. ................... 11

        3.      The Settlement provides adequate relief to Class Members. ................... 12

        4.      The Settlement provides equitable treatment to Class Members. ............. 14

        5.      The *Grinnell* factors support preliminary approval. ............................... 14

    B.      The Proposed Settlement Class Meets the Requirements of Rule 23. .................. 16

        1.      The Class is sufficiently numerous. .......................................................... 16

        2.      Questions of law and fact are common to the Class. ............................... 17

        3.      Plaintiffs' claims and defenses are typical. .............................................. 17

        4.      Plaintiffs will provide fair and adequate representation. ......................... 18

    C.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3). .......... 19

        1.      Common questions of law and fact predominate. ...................................... 19

        2.      Class action treatment is superior to other methods. ............................... 20

D.      The Court Should Approve the Proposed Notice Plan..........................................21

E.      The Court Should Appoint the Settlement Administrator. ..................................22

F.      The Court Should Appoint the Class Representatives. ........................................22

G.      The Court Should Appoint Class Counsel. .........................................................22

VI.     CONCLUSION................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**CASE(S)**                                                                                                    **PAGE(S)**

*Alcantara v. CNA Mgmt., Inc.*,
   264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) .................................................................. 16

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................11, 18

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ......................................................................................... 19

*Attias v. Carefirst, Inc.*,
   344 F.R.D. 38 (D.D.C. 2023) ............................................................................ 20

*Beasley v. TTEC Servs. Corp.*,
   No. 22-cv-00097, 2023 U.S. Dist. LEXIS 81211 (D. Colo. May 9, 2023)........................ 18, 20

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. Nov. 26, 2002) ..............................................................11

*Bowdle v. King's Seafood Co., LLC*,
   No. SACV 21-01784, 2022 U.S. Dist. LEXIS 240383 (C.D. Cal. Oct. 19, 2022) .................. 20

*Castagna v. Madison Square Garden, L.P.*,
   2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ......................................... 15

*Charron v. Pinnacle Group N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................ 21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ....................................................................... 10, 14

*Corra v. ACTS Ret. Servs.*,
   No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024).......................... 12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2007) .......................................................................... 12

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... 15

*Freeland v. AT & T Corp.*,
   238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) ........................................................ 17

4902-8248-0726, v. 1

*Grissom v. Sterling Infosystems, Inc.*,
    No. 20-CV-7948, 2024 U.S. Dist. LEXIS 197927 (S.D.N.Y. Oct. 30, 2024) ........................... 9

*Grissom v. Sterling Infosystems, Inc.*,
    2024 U.S. Dist. LEXIS 197927 (S.D.N.Y. Oct. 30, 2024) ................................................ passim

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08-cv-6060, 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ............................ 13

*Hapka v. Carecentrix, Inc.*,
    No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) ......................... 19

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................... 12, 15

*In re Capital One Consumer Data Sec. Breach Litig.*,
    No. 1:19-md-2915, 2022 U.S. Dist. LEXIS 234943 (E.D. Va. Sep. 13, 2022) ....................... 18

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01-MD-1409, M-21-95, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ............. 10

*In re GE/CBPS Data Breach Litig.*,
    No. 20-cv-2903, 2023 U.S. Dist. LEXIS 53171 (S.D.N.Y. Mar. 28, 2023) ............................ 15

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................... 12

*In re Luxottica Group Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................... 9

*In re Nasdaq Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................... 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................... 10

*In re Sonic Corp. Customer Data Breach Litig.*,
    No.1:17-md-02807, 2020 U.S. Dist. LEXIS 204169 (N.D. Ohio Nov. 2, 2020) ..................... 19

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    309 F.R.D. 482 (D. Minn. 2015) ................................................................ 18, 20

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ..................................................................... 13

ii

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152, (S.D.N.Y. Mar. 19, 2014) ................................................................. 17

*Kostka v. Dickey's Barbecue Rests., Inc.*,
   No. 3:20-cv-03424, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022) ..................... 19

*Lowe v. NBT Bank*,
   No. 3:19-CV-1400, 2022 U.S. Dist. LEXIS 180182 (N.D.N.Y. Sep. 30, 2022) ................ 13, 22

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................................11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ......................................................................................... 21

*Thomsen v. Morley Co., Inc.*,
   No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703 (E.D. Mich. Nov. 4, 2022) ......... 18, 19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...............................................................................9, 11

*Yuzary v. HSBC Bank USA, N.A*,
   No. 12-CV-3693, 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. Apr. 30, 2013) ............................ 10

**RULES**

Fed. R. Civ. P. 23 ................................................................................. 1, 16, 21, 22

Fed. R. Civ. P. 23(a) .................................................................................11, 16

Fed. R. Civ. P. 23(a)(1) ................................................................................. 16

Fed. R. Civ. P. 23(a)(1)-(4) ............................................................................. 16

Fed. R. Civ. P. 23(a)(2) ................................................................................. 17

Fed. R. Civ. P. 23(a)(3) ................................................................................. 17

Fed. R. Civ. P. 23(a)(4) ................................................................................. 18

Fed. R. Civ. P. 23(b)(3) ......................................................................... 16, 19, 20

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 21

4902-8248-0726, v. 1

Fed. R. Civ. P. 23(e) .................................................................................................. 8, 21

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................ 21

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii) ...................................................................................... 10

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 8, 10

Fed. R. Civ. P. 23(e)(2) (A)-(D) ........................................................................................ 10

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................ 10

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................................11

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................ 12

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................................ 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 14

Fed. R. Civ. P. 23(e)(3) .............................................................................................. 12, 14

Fed. R. Civ. P. 23(g) ......................................................................................................... 23

Fed. R. Civ. P. 23(g)(1)(A) (i–iv) ..................................................................................... 22

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................................... 22

## OTHER AUTHORITIES

2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992) ........................... 8

## I.    INTRODUCTION

Plaintiffs Elena Bugaeva, Rachel Oliver, and Catherina Svoboda ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23. This case arises out of the data incident that was discovered by Defendant Highgate Hotels, L.P. ("Defendant" or "Highgate") on or around March 26, 2024 (the "Data Incident"). After several months of arm's-length negotiations, Plaintiffs and Defendant reached the Settlement Agreement (the "Settlement" or "S.A.") attached as **Exhibit 1**.

The Settlement provides timely and excellent benefits to the Settlement Class. Defendant will establish a non-reversionary common fund of $487,500.00 (the "Settlement Fund") from which each Settlement Class Member can claim up to $3,500.00 for documented monetary losses or a pro rata cash payment (estimated to be $100). Furthermore, the Settlement Fund will pay for Plaintiffs' Service Awards, attorneys' fees, litigation expenses, and the costs of Settlement Administration.

The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this Circuit and elsewhere. Importantly, the Settlement provides relief sought by the lawsuit Thus, Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the settlement described in the "Settlement Agreement" between Plaintiffs and Highgate; (2) preliminarily certifying the Settlement Class for purposes of Settlement; (3) appointing Plaintiffs Elena Bugaeva, Rachel Oliver, and Catherina Svoboda as Class Representatives; (4) appointing Jeff Ostrow of Kopelowitz Ostrow P.A, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel; (5) approving the notice plan set forth in the Settlement

Agreement; (6) appointing Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator; (7) approving the form and content of the Short Form Notice (S.A. Ex. 1 and 2), Long Form Notice (S.A. Ex. 3), and Claim Form (S.A. Ex. 4); and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

## II.    STATEMENT OF FACTS

### A.  Background

Defendant Highgate is a company that manages hotels throughout the United States, and has its principal place of business in New York, New York. *See* Amended Consolidated Complaint "Compl.") ¶¶ 3, 19. In the course of its operating its business, Defendant collects, maintains, and stores certain Private Information pertaining to its employees. *Id*. ¶ 25. On or around March 26, 2024, Defendant discovered unusual activity on its computer network. *Id*. ¶ 7; Settlement Agreement ("S.A.") ¶¶ 1, 27. Defendant further determined that certain Private Information of its current and former employees, Plaintiffs and the Class Members, may have been accessed by an unauthorized third party, including, but not limited to their names, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, and/or health insurance information. Compl. ¶ 40. Thereafter, in December 2024, Defendant began notifying individuals who may have been impacted by the Data Incident. *Id*. ¶ 39. As a result of the Data Incident, Plaintiffs allege they and the proposed Class Members were caused widespread injury and damages, including financial costs incurred mitigating the materialized risk and imminent threat of identity theft; loss of time and loss of

productivity incurred mitigating the Data Incident; actual identity theft and fraud; financial costs incurred due to actual identity theft; loss of time incurred due to actual identity theft; deprivation of value of their Private Information; loss of privacy; emotional distress, anxiety and stress; and the continued risk to their sensitive Private Information, which remains in Highgate's possession. *Id.* ¶ 91.

### B. Procedural History

Following the Data Incident, Defendant was named in three putative class actions relating to the Data Incident.[1] Thereafter, in an effort to conserve resources for the benefit of those who may have been impacted in the Data Incident, the Parties began discussing resolution of the Action. *See* Joint Declaration of Proposed Class Counsel in Support of Plaintiffs' Motion ("Joint Declaration" or "Joint Dec.") ¶ 3, attached hereto as **Exhibit 2**. The Parties scheduled a mediation before experienced class action mediator, Steven Jaffe, Esq., for May 2, 2025. *Id.* ¶ 4. In preparation for the mediation Plaintiffs requested, and Defendant provided, discovery on topics including, but not limited to, the number of individuals and the categories of Private Information impacted by the Data Incident. Plaintiffs also prepared a mediation statement outlining their position for the Defendant and the mediator. *Id.* ¶ 5.

Through informal discovery and the exchange of information in anticipation of mediation, it became evident that it was in the best interest of the Settlement Class to negotiate directly and to use the funds allocated for mediation for the Settlement class. *Id.* ¶ 6. The parties were able to reach an agreement as to the material terms of the Settlement prior to mediation, which provides

---

[1] *Elena Bugaeva v. Highgate Hotels, L.P.,* No. 1:24-cv-10001-VSB (S.D.N.Y.); *Rachel Oliver v. Highgate Hotels, L.P.,* No. 1:25-cv-00137 (S.D.N.Y.); *Catherine Svoboda v. Highgate Hotels, L.P.,* No. 1:25-cv-00481.

4902-8248-0726, v. 1

substantial benefits to the Class to compensate them for the Data Incident. *Id.* ¶ 7. Over the next couple months, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id.* ¶ 8.

## III.    SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of a Settlement Class defined as: all living individuals residing in the United States who received notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. S.A. ¶ 58. All members of the Settlement Class that do not opt-out of the settlement shall be referred to as "Settlement Class Members." *Id.* ¶ 59. Excluded from the Settlement Class are: (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff. *Id.* ¶ 58. "Private Information" means Settlement Class Members' information that may have been accessible in the Data Incident, which may include names, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, and/or health insurance information. *Id.* ¶ 50. There are approximately 16,142 individuals in the Settlement Class. Joint Dec. ¶ 10.

### B.  Settlement Benefits

The Settlement provides Class Members with timely benefits targeted at remediating the specific harms they may have suffered because of the Data Incident. The Settlement establishes a non-reversionary common fund of four hundred eighty-seven thousand five hundred dollars

($487,500.00). S.A. ¶ 64. Under the Settlement, Settlement Class Members can obtain (1) cash compensation for documented monetary losses up to $3,500.00 per Settlement Class Member, or (2) a *pro rata* cash payment (estimated at $100.00). *Id.* ¶¶ 68-70.

### 1.  Documented Monetary Losses

Settlement Class Members can obtain up to $3,500.00 per person for documented monetary losses related to the Data Incident, simply by submitting a valid claim, along with reasonable documentation in support. *Id.* ¶ 69(a). Non-exhaustive examples of reasonable documentation include telephone records, correspondence, emails, or receipts. *Id.* Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.*

### 2.  *Pro Rata* Cash Payments

As an alternative to making a claim for documented losses, Settlement Class Members can claim a *pro rata* cash payment in the estimated amount of $100.00. *Id.* ¶ 69(b). The precise value of the *pro rata* cash payments will be adjusted upwards or downwards based upon the number of valid claims filed and the funds remaining in the Settlement Fund following payment of Settlement Administration Costs, any attorneys' fees, costs, Service Awards granted by the Court, and claims for Documented Losses.

### C.  Settlement Administration

Under the proposed Settlement, the Parties agreed that Epiq will serve as the Settlement Administrator to process all claims, subject to approval by the Court. *Id.* ¶ 72-73. The Settlement Administrator will, *inter alia*, provide CAFA Notice, complete the Notice Program, review Claim Forms, establish and maintain the Settlement Fund, establish and maintain a post office box to receive opt-out requests and objections and Claim Forms, establish and maintain the Settlement Website, establish and maintain an automated toll-free telephone line for Settlement Class

Members with questions, process physical and electronic Claim Forms, disperse cash benefits, notify Settlement Class Members of deficient claims, process opt-out requests, process objections, provide weekly reports to Class Counsel and Defendant's Counsel, and prepare a declaration confirming the Notice Program was completed in accordance with the Settlement Agreement. *Id*. ¶ 74.

### D.  Notice to Settlement Class Members

Within 10 days after the entry of the Preliminary Approval Order, Defendant shall provide the Class List to the Settlement Administrator. *Id*. ¶ 75. Within 30 days after the entry of the Preliminary Approval Order, the Settlement Administrator will then disseminate direct notice by US Mail to Settlement Class Members via the Postcard Notice (S.A. Ex. 2). *Id*. ¶ 76. The Settlement Administrator will also establish the Settlement Website no later than the day before direct notice begins, which will include the Long Form Notice (S.A. Ex. 3). *Id*. ¶ 78. The Notices shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period; the last day of the Objection Period; the Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website. *Id*. ¶ 77.

### E.  Opt-Outs

Settlement Class Members may opt out from receiving the benefits and being bound by the terms of the Settlement. *Id*. ¶¶ 79, 104. The Notices will inform Settlement Class Members of their rights to opt out of the Settlement. *Id*. ¶¶ 77, 79. To opt-out of the Settlement, opt-out requests must be postmarked by the Opt-Out deadline, which is 60 days after the Notice Date. *Id*. ¶¶ 44, 79. To be valid, the opt-out request must be personally signed by the Settlement Class member and

contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id*. ¶ 79.

### F. Objections

Further, Settlement Class Members may object by mailing their objections to the Settlement Administrator, Class Counsel, and Defendant's Counsel and filing their objections with the Court. *Id*. ¶ 80. To be valid, objections must be submitted by the Objection Deadline—which is 60 days after the Notice Date. *Id*. ¶¶ 43, 80. An objection must set forth the following: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards, and whether they will appear at the Final Approval Hearing; (e) the number of times in which the objector's counsel and/or the objector's counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling on the objection issued by the trial and appellate courts in each such listed case; (f) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (g) a statement

confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (h) the objector's signature. *Id*. ¶ 81.

### G. Attorneys' Fees and Service Awards

The Parties did not negotiate attorneys' fees, costs, and Service Awards until after all material terms of the Settlement were agreed upon. Joint Dec. ¶ 11. In so doing, Class Counsel and Plaintiffs avoided conflicts with the Settlement Class. *Id*. Class Counsel will file for an award of attorneys' fees up to one-third (approximately 33.33%) of the Settlement Fund plus reimbursement of reasonable litigation expenses. S.A. ¶ 100. Additionally, Class Counsel will request Service Awards of $2,000.00 for each Class Representative. *Id*. ¶ 99. These Service Awards are intended to reimburse Class Representatives for their efforts and in recognition of their dedication to the Settlement Class. Joint Dec. ¶ 12.

### H. Release of Claims

Any Settlement Class Members, who do not exclude themselves, will release all "Released Claims" as defined under the Settlement Agreement. S.A. ¶¶ 52, 103–05.

## IV.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the Settlement Class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992). In weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e). As such, after preliminary

approval is granted, notice is provided to settlement class members (who are then given the opportunity to exclude themselves from or object to the settlement). *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). At the Final Fairness Hearing, Settlement Class Members may be heard by the Court prior to its determination of whether to grant final approval of the settlement agreement and dismiss the case. *Id*.

## V.    ARGUMENT

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *Grissom v. Sterling Infosystems, Inc.*, No. 20-CV-7948, 2024 U.S. Dist. LEXIS 197927, at *5 (S.D.N.Y. Oct. 30, 2024). Indeed, "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy." *Id*. (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 114 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, *Newburg on Class Actions* § 11:53, at 167 (4th ed. 2002))). In particular, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Here, Plaintiffs seek to certify, for settlement purposes, the Settlement Class which is defined as "all living individuals residing in the United States who received notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident." S.A. ¶ 58. There are approximately 16,142 individuals in the Settlement Class. Joint Dec. ¶ 10. For the reasons explained *infra*, the Court should grant preliminary approval. *See also Grissom*, 2024 U.S.

Dist. LEXIS 197927, at *6 (S.D.N.Y. Oct. 30, 2024) ("The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle.") (citing *Yuzary v. HSBC Bank USA, N.A*, No. 12-CV-3693, 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. Apr. 30, 2013)).

### A.  The Settlement Satisfies the Criteria for Preliminary Approval.

The Settlement satisfies the criteria for preliminary approval because the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *6 (S.D.N.Y. Oct. 30, 2024) (quoting *In re Currency Conversion Fee Antitrust Litig*., No. 01-MD-1409, M-21-95, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006)). Therein, courts consider "the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *Id*. (citing Fed. R. Civ. P. 23(e)(2) (A)-(D)). Besides these four factors, courts within the Second Circuit also consider the nine factors established in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"). However, there is some partial overlap between the factors (and courts often analyze them together). *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *7 (S.D.N.Y. Oct. 30, 2024).

### 1.  The Plaintiffs and Class Counsel adequately represented the Class.

Under Rule 23(e)(2)(A), courts consider whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no conflict

of interest between the class representatives and other members of the class; and (2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 156 (S.D.N.Y. Nov. 26, 2002) *quoting Marisol A. v. Giuliani,* 126 F.3d at 378; *see also Amchem Prod., Inc. v. Windsor,* 521 U.S. at 624. Here, the Class Representatives adequately represented the Settlement Class by assisting in the investigation of the case, reviewing the complaints, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering Class Counsel's many questions. Joint Dec. ¶ 13. Furthermore, the Class Representatives do not have any conflicts with the Class. *Id*. Plaintiff's interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiff and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner.

Class Counsel adequately represented the Settlement Class—by utilizing their extensive experience in class action litigation and complex data breach cases—to secure a substantial settlement and provide timely relief. *Id.* ¶ 14. Thus, the requirements of Rule 23(a) are satisfied. Thus, this factor weighs toward preliminary approval.

### 2. The Settlement is the product of arm's-length negotiations.

Under Rule 23(e)(2)(B), courts consider whether "the proposal was negotiated at arm's lengths[.]" Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was the product of arm's-length negotiations. The Parties scheduled a mediation session with Steven Jaffe, Esq., who has substantial experience in mediating data breach class actions. Joint Dec. ¶ 4. However, the Parties decided that it was in the best interest of the Settlement Class to negotiate directly and to use the funds allocated for mediation for the Settlement class. *Id*. ¶ 6. Ultimately, the Parties were able to reach a settlement in principle prior to their scheduled mediation, and subsequently negotiated and

executed the Settlement Agreement. *Id.* ¶ 7.

If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2007); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

Here, both Parties were represented by experienced counsel, and the settlement was only reached after months of arm's length negotiations. There is no evidence of collusion. Accordingly, this factor weighs in favor of preliminary approval.

### 3. The Settlement provides adequate relief to Class Members.

Under Rule 23(e)(2)(C), courts consider four factors when considering the adequacy of the relief: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). On balance, these factors weigh toward preliminary approval. After all, the Settlement provides relief and terms comparable to other recent court-approved data breach settlements. *See, e.g., Corra v. ACTS Ret. Servs.,* No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024) (granting preliminary approval of a data breach settlement of 20,754 people with a $350,000 cap providing up to $3,500 for extraordinary losses, $350 in ordinary out-of-pocket losses, $75 in lost time, and two years of credit monitoring).

***First***, the relief is adequate because "the costs, risks, and delay of trial and appeal" are substantial. Fed. R. Civ. P. 23(e)(2)(C)(i); Joint Dec. ¶ 15. While Plaintiffs strongly believe in the

merits of their case, Plaintiffs also recognize that Defendant asserted numerous, and potentially dispositive, defenses. *Id*. Given these risks, and the risks posed by data breach litigation in particular, the Settlement provides relief that is both timely and substantial. *Id*.; *see also Hammond v. Bank of N.Y. Mellon Corp*., No. 08-cv-6060, 2010 U.S. Dist. LEXIS 71996, at *4 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re TJX Cos. Retail Sec. Breach Litig*., 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify a data breach class action).

**Second**, the relief is adequate because the "proposed method of distributing relief" is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii); Joint Dec. ¶ 16. Epiq will, *inter alia*, complete the Notice Program, review Claim Forms, establish and maintain the Settlement Fund, establish and maintain a post office box to receive Claim Forms, establish and maintain the Settlement Website, establish and maintain an automated toll-free telephone line for Settlement Class Members with questions, process physical and electronic Claim Forms, disperse cash benefits, and notify Settlement Class Members of deficient claims. S.A. ¶ 74.

**Third**, the relief is adequate because the "terms of any proposed award of attorneys' fees" are reasonable. Fed. R. Civ. P. 23(e)(2)(C)(iii); Joint Dec. ¶ 17. Here, the Parties did not negotiate attorneys' fees, costs, and Service Awards until after all material terms of the Settlement were agreed upon. *Id*. ¶ 11. In doing so, Class Counsel and Plaintiffs avoided conflicts with the Settlement Class. *Id*. Thus, Class Counsel will file for an award of attorneys' fees up to one third (approximately 33.33%) of the Settlement Fund and reimbursement of reasonable litigation expenses. S.A. ¶ 100. This request aligns with those approved in the Second Circuit. *Lowe v. NBT Bank*, No. 3:19-CV-1400, 2022 U.S. Dist. LEXIS 180182, at *30-31 (N.D.N.Y. Sep. 30, 2022) (collecting cases and explaining that an award of 33.33% "is a reasonable baseline").

13

***Fourth***, there is no "agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv); Joint Dec. ¶ 18. Thus, on balance, these four factors weigh toward preliminary approval.

### 4. The Settlement provides equitable treatment to Class Members.

Under Rule 23(e)(2)(D), courts consider whether "the proposal treats class members equitably relative to each other[.]" Fed. R. Civ. P. 23(e)(2)(D). Each Settlement Class Member will be given equal opportunity to submit claims and obtain the compensation to which they are entitled. S.A. ¶ 68. Thus, this factor weighs in support of preliminary approval.

### 5. The *Grinnell* factors support preliminary approval.

Preliminary approval also is supported by the nine *Grinnell* factors which are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *7 n.2 (S.D.N.Y. Oct. 30, 2024) (citing *Grinnell*, 495 F.2d at 463). On balance, these factors weigh in favor of preliminary approval.

***First***, "the complexity, expense and likely duration of the litigation" are substantial. Joint Dec. ¶ 19. Indeed, Plaintiffs would likely need to gain and maintain class certification, prevail on summary judgment, win at trial, and prevail on appeal. *Id*. Additionally, the amount of data-expert analysis and testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. *Id*. Thus, this factor weighs toward

preliminary approval.

*Second*, "the reaction of the class to the settlement" is currently unknown. Joint Dec. ¶ 20. While the Class Representatives have reviewed and approved the Settlement Agreement, other Class Members have not yet had the opportunity to voice their opinions. *Id*. Thus, this factor is neutral and can be better evaluated at the final approval stage of the proceedings.

*Third*, regarding "the stage of the proceedings and the amount of discovery completed[,]" While the proceedings are still at a relatively early stage, the Parties engaged in informal discovery —which enabled the Parties to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. Joint Dec. ¶ 6. On balance, this factor slightly weighs toward preliminary approval. *See Castagna*, 2011 U.S. Dist. LEXIS 64218, at *30 (S.D.N.Y. June 7, 2011) (commending class counsel for having "negotiated an excellent settlement early in the litigation thus saving hundreds of hours of legal time").

*Fourth*, *fifth, and sixth*, the risk of establishing liability, damages, and maintaining the class action throughout trial are all substantial. Joint Dec. ¶ 21. Thus, this factor weighs toward preliminary approval. *See In re GE/CBPS Data Breach Litig*., No. 20-cv-2903, 2023 U.S. Dist. LEXIS 53171, at *5 (S.D.N.Y. Mar. 28, 2023) (considering these factors in a data breach class action and granting final approval).

*Seventh*, there is no suggestion that Defendant could not withstand a greater judgment. Joint Dec. ¶ 22. However, the "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair[.]" *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000)). Thus, this factor is neutral.

*Eighth and ninth*, the Settlement is reasonable in light of the best possible recovery and

the attendant risks of litigation. Joint Dec. ¶ 23. As discussed above, the Settlement establishes a non-reversionary common fund of $487,500.00 from which Settlement Class Members can obtain cash compensation for documented monetary losses up to $3,500.00 per Settlement Class Member or a *pro rata* cash payment in the estimated amount of $100.00. S.A. ¶¶ 68, 70. While Plaintiffs strongly believe in the merits of their case, Plaintiffs also recognize that Defendant raised numerous, and potentially dispositive, defenses. Joint Dec. ¶ 23. Given these risks, and the risks posed by data security litigation in particular, the Settlement provides relief that is both timely and substantial. *Id*. Thus, on balance, the *Grinnell* factors weigh toward preliminary approval.

**B.  The Proposed Settlement Class Meets the Requirements of Rule 23.**

The proposed settlement class must satisfy the requirements of Rule 23(a) and (b)(3). *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *7 (S.D.N.Y. Oct. 30, 2024). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id*. (quoting Fed. R. Civ. P. 23(a)(1)-(4)). Additionally, Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

**1.  The Class is sufficiently numerous.**

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Generally, a putative class of over forty members is sufficient to satisfy numerosity. *Alcantara v. CNA Mgmt., Inc*., 264 F.R.D. 61, 64 (S.D.N.Y. Dec.

8, 2009). Here, the putative class includes approximately 16,142 individuals. Joint Dec. ¶ 10. Thus, numerosity is satisfied.

### 2.    Questions of law and fact are common to the Class.

Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc*, 564 U.S. at 350. In other words, the determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. And "[e]ven a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp*., 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here commonality is readily satisfied, as Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by Defendant on or about March 26, 2024. For example, Plaintiffs alleged the following questions of law and fact that are common to the class: whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Incident; whether Defendant weas negligent in maintaining, protecting, and securing Private Information in its possession and control; and whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's Private Information. Thus, commonality is satisfied.

### 3.    Plaintiffs' claims and defenses are typical.

Typicality requires that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3); *see also Grissom*, 2024 U.S. Dist.

LEXIS 197927, at *17 (S.D.N.Y. Oct. 30, 2024). Here, Plaintiffs satisfy typicality. First, the claims and defenses of Plaintiffs and Class Members all stem from a single event: the Data Incident. Compl. ¶¶ 39-40. And Plaintiffs and Class Members all share similar claims—which also derive from the same theories (*e.g.*, negligence). *See id*. ¶¶ 171, 178-226. Moreover, typicality is generally found in data security class actions like this one. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig*., 309 F.R.D. 482, 490 (D. Minn. 2015); *Beasley v. TTEC Servs. Corp.*, Civil Action No. 22-cv-00097, 2023 U.S. Dist. LEXIS 81211, at *14 (D. Colo. May 9, 2023); *Thomsen v. Morley Co., Inc.*, No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703, at *6 (E.D. Mich. Nov. 4, 2022); *In re Capital One Consumer Data Sec. Breach Litig*., No. 1:19-md-2915, 2022 U.S. Dist. LEXIS 234943, at *15 (E.D. Va. Sep. 13, 2022).

### 4. Plaintiffs will provide fair and adequate representation.

Adequacy requires that the class representative fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named [P]arties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997*); see also Grissom*, 2024 U.S. Dist. LEXIS 197927, at *17 (S.D.N.Y. Oct. 30, 2024) ("The adequacy requirements are met both because the named plaintiff's interests are not antagonistic to those of the class and because, as discussed above, her attorneys have sufficient skill and experience to competently represent the class and have achieved a sound result.").

Here, adequacy is met because, as discussed above, Class Representatives share common interests with the class stemming from the exact same Data Incident. Compl. ¶¶ 39-40, 172. Thus, the Class Representatives do not have any interests antagonistic to other Class Members. Joint Dec. ¶ 13. And finally, the Class Representatives have retained qualified counsel with broad experience in complex class actions and, in particular, data breach class actions. *Id.* ¶ 14. Thus,

adequacy is satisfied.

### C. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

#### 1. Common questions of law and fact predominate.

Predominance requires that questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Supreme Court is clear that predominance "does *not* require" a plaintiff seeking class certification to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013) (emphasis added). Rather, predominance merely requires "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id*. (quoting Fed. R. Civ. P. 23(b)(3)); *see also Grissom*, 2024 U.S. Dist. LEXIS 197927, at *18 (S.D.N.Y. Oct. 30, 2024).

Courts recognize that predominance is readily satisfied in data breach class actions, which—by their very nature—can implicate many common questions. *See, e.g., Thomsen*, 2022 U.S. Dist. LEXIS 201703, at *8 (E.D. Mich. Nov. 4, 2022) (finding predominance satisfied because class members all suffered similarly from the exact same data breach); *In re Sonic Corp. Customer Data Breach Litig*., No. 1:17-md-02807, 2020 U.S. Dist. LEXIS 204169, at *13 (N.D. Ohio Nov. 2, 2020) (same); *Kostka v. Dickey's Barbecue Rests., Inc*., No. 3:20-cv-03424, 2022 U.S. Dist. LEXIS 188186, at *28 (N.D. Tex. Oct. 14, 2022) (same); *Hapka v. Carecentrix, Inc*., No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (same).

Predominance is satisfied here because Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by Defendant on or about March 26 2024. Compl. ¶¶ 39-40, 170. And as discussed *supra*, Plaintiffs alleged numerous common questions of law and fact which they allege predominate over any

individualized questions and are susceptible to common evidence. *See also id.* ¶ 173; *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *17 (S.D.N.Y. Oct. 30, 2024) (finding predominance satisfied because "[c]ommon issues predominate across the class because their harms stem from [defendant's] treatment of class members").

### 2. Class action treatment is superior to other methods.

Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Courts recognize that superiority is readily satisfied in data breach class actions "[b]ecause the data-breach issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information." *Thomsen*, 2022 U.S. Dist. LEXIS 201703, at *9; *see also In re Target Corp.*, 309 F.R.D. at 490 (D. Minn. 2015) (holding that "the class action device is the superior method for resolving this dispute"); *Beasley*, 2023 U.S. Dist. LEXIS 81211, at *19 (same); *Bowdle v. King's Seafood Co., LLC*, No. SACV 21-01784, 2022 U.S. Dist. LEXIS 240383, at *13-14 (C.D. Cal. Oct. 19, 2022) (same); *Attias v. Carefirst, Inc.*, 344 F.R.D. 38, 57 (D.D.C. 2023) (same).

Superiority is satisfied here. After all, individual litigation for all Class Members—who allege the same claims arising from the same Data Incident—would be highly inefficient and unnecessarily burden judicial resources. Joint Dec. ¶ 31. Moreover, the proposed Settlement will give the Parties the benefit of finality, as opposed to protracted and individualized litigation. *Id.* ¶ 28. Thus, superiority is satisfied. *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *18 (S.D.N.Y. Oct. 30, 2024) (finding that "a class action is a superior method of resolving" the "common legal and factual issues").

**D. The Court Should Approve the Proposed Notice Plan.**

The Court should approve the notice plan because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. And notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The proposed notice plan satisfies due process. Here, the Parties have agreed that notice should be provided by Postcard Notice (S.A. Ex. 2) by US Mail, and that Notice shall also be published on the Settlement Website. S.A. ¶ 35. And both the Short Form Notice (Postcard) and Long Form Notice provide all information required by Fed. R. Civ. P. 23(c)(2)(B). *See* S.A. Exs. 1-3. Thus, the proposed notice plan satisfies—and even exceeds—that which is required by due process. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (collecting cases) (explaining that "[t]here are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements" and that "[n]otice is

considered 'adequate if it may be understood by the average class member'").

**E.  The Court Should Appoint the Settlement Administrator.**

The Court should appoint Epiq as the Settlement Administrator. The Parties agreed upon Epiq given its substantial experience in administering complex class action settlements. Joint Dec. ¶ 9.

**F.  The Court Should Appoint the Class Representatives.**

The Court should appoint Plaintiffs Elena Bugaeva, Rachel Oliver, and Catherina Svoboda as Class Representatives. Thus far, Plaintiffs adequately represented the Settlement Class by assisting in the investigation of the case, reviewing the complaints, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering Class Counsel's many questions. Joint Dec. ¶ 13. Additionally, Class Counsel will request Service Awards of $2,000.00 for each Class Representative. S.A. ¶ 99. This amount is reasonable and in line with service awards to representatives in other litigations in this Circuit. *see Lowe*, 2022 U.S. Dist. LEXIS 180182, at *27 (N.D.N.Y. Sep. 30, 2022) ("A Service Award of $5,000.00 for each Class Representative is reasonable and within the range of awards granted in this Circuit.").

**G.  The Court Should Appoint Class Counsel.**

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). As evidenced by the Joint Declaration of Proposed Class Counsel,

the proposed Class Counsel meets these requirements. Joint Dec. ¶ 33 & Exs. 1-3. Thus, the Court should appoint Jeff Ostrow of Kopelowitz Ostrow P.A, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC as Class Counsel under Rule 23(g).

## VI.    CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement between Plaintiffs and Defendant; (2) preliminarily certifying the Settlement Class for purposes of Settlement; (3) appointing Plaintiffs Elena Bugaeva, Rachel Oliver, and Catherina Svoboda as Class Representatives; (4) appointing Jeff Ostrow of Kopelowitz Ostrow P.A, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC as Class Counsel; (5) approving the Notice Program and Claims Process; (6) appointing Epiq as Settlement Administrator; (7) and scheduling a Final Approval Hearing in no less than 130 days following Preliminary Approval to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

Date: July 18, 2025.                         Respectfully submitted,

                                             /s/ Jeff Ostrow
                                             Jeff Ostrow*
                                             Steven P. Sukert (NY Bar No. 5690532)
                                             **KOPELOWITZ OSTROW, P.A.**
                                             1 West Las Olas Blvd., Suite 500
                                             Fort Lauderdale, FL 33301
                                             Tel.: (954) 332-4200
                                             sukert@kolawyers.com
                                             ostrow@kolawyers.com

Gary M. Klinger (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Vicki J. Maniatis, Esq. (NY Bar No. 2578896)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 1002
Tel: (516) 491-4665
vmaniatis@milberg.com

 J. Gerard Stranch, IV*
Grayson Wells*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*admitted Pro Hac Vice*

**Counsel for Plaintiffs and the Putative Class**

24