# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELENA BUGAEVA, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>HIGHGATE HOTELS, L.P.,<br><br>      Defendant. | Case No.: 1:24-cv-10001-VSB |

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into between Plaintiffs,[1] individually, and on behalf of the Settlement Class, and Defendant, as of the date last signed below. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

### I.    Background

1.    On or about March 26, 2024, Defendant detected unauthorized activity in its network. Defendant subsequently determined that the Private Information of 16,142 of its current and former employees may have been impacted in the Data Incident.

2.    Following the Data Incident, Defendant notified individuals whose information may have been impacted in the Data Incident, including mailing notification letters to potentially impacted individuals.

3.    On December 13, 2024, a putative class action lawsuit was filed against Defendant, captioned *Elena Bugaeva v. Highgate Hotels, L.P.*, Case No. 1:24-cv-10001. On January 7, 2024,

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II herein.

a second putative class action lawsuit was filed against Defendant, captioned *Rachel Oliver v. Highgate Hotels, L.P.*, Case No. 1:25-cv-00137. On January 16, 2025, a third putative class action lawsuit was filed against Defendant, captioned *Catherine Svoboda v. Highgate Hotels, L.P.*, Case No. 1-25-cv-00481. All three actions were filed in the United States District Court for the Southern District of New York.

4.      Thereafter, the Parties began discussing resolution of the litigation and scheduled a mediation before experienced class action mediator, Steven Jaffe, Esq. on May 2, 2025.

5.      On February 26, 2025, deadlines in the three actions were stayed by order of the Court pending the Parties' mediation.

6.      In advance of the mediation, Plaintiffs requested and Defendant produced informal discovery, on topics including, but not limited to, the number of individuals and the categories of Private Information impacted by the Data Incident. The Parties also prepared mediation briefs, outlining their position for the other party and the mediator.

7.      Prior to mediation, the Parties decided that it was in the best interest of the Settlement Class to negotiate directly and to use the funds allocated for mediation for the Settlement class.

8.      The Parties then negotiated the materials terms of this Settlement on May 1, 2025.

9.      For efficiency purposes, Plaintiffs in the second and third-filed actions dismissed their complaints and Plaintiffs filed an Amended Complaint on June 16, 2025, adding all Plaintiffs to the *Bugaeva* action.

10.      The Parties now agree to settle the Action entirely, without any admission by Defendant of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes arising out of

or relating to the allegations made in the Action, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs enter into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows:

II.    **Definitions**

11.    "**Action**" means the lawsuit, captioned , *Elena Bugaeva, et al. v. Highgate Hotels, L.P.*, No.: 1:24-cv-10001 (S.D.N.Y.).

12.    "**Agreement**" or "**Settlement**" or "**Settlement Agreement**" means this Settlement Agreement and all attachments.

3

13. "**Application for Attorneys' Fees, Costs, and Service Awards**" means the application to be made with the Motion for Final Approval seeking Class Counsel's attorneys' fees and reimbursement for costs and Service Awards for the Class Representatives.

14. "**CAFA Notice**" means the Class Action Fairness Act Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

15. "**Cash Payment**" means compensation paid to Settlement Class Members who elected to submit a Claim for either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash.

16. "**Cash Payment A – Documented Losses**" means the documented loss form of cash compensation Settlement Class Members may elect to Claim in the Settlement.

17. "**Cash Payment B – Alternate Cash**" means the flat cash payment form of cash compensation Settlement Class Members may elect to Claim in the Settlement.

18. "**Claimant**" means an individual who submits a Claim Form.

19. "**Claim Deadline**" means the postmark and/or online submission deadline for claims, which shall be 90 days after the Notice Date and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class Member to be eligible for a Settlement Class Member Benefit.

20. "**Claim Form**" means the proof of claim, substantially in the form attached hereto as *Exhibit 3* which may be modified as necessary subject to the Parties' approval.

21.    "**Claim Process**" means the process by which Claimants or Settlement Class members submit Claims to the Settlement Administrator for the election of Settlement Class Member Benefits.

22.    "**Class Counsel**" means the following: Jeff Ostrow of Kopelowitz Ostrow P.A, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC.

23.    "**Class List**" means a list of all individuals in the Settlement Class. Defendant shall prepare and provide the Class List to the Settlement Administrator for Notice using the information in its records. The Class List shall include the Settlement Class Members' names, postal address (if available), and telephone number (if available).

24.    "**Class Representatives**" means those Plaintiffs that sign this Agreement.

25.    "**Complaint**" means the Amended Class Action Complaint filed in the Action on June 16, 2025.

26.    "**Court**" means the United States District Court for the Southern District of New York and the Judge(s) assigned to the Action.

27.    "**Data Incident**" means the alleged March 2024 incident in which unauthorized third parties purportedly accessed to Defendant's network containing Private Information.

28.    "**Effective Date**" means the day after the entry of the Final Approval Order, provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of (a) 30 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order, or (b) if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

29.    "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

30.    "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

31.    "**Final Approval Hearing**" means the hearing held before the Court wherein the Court will consider granting Final Approval of the Settlement and the Application for Attorney's Fees, Costs, and Service Awards.

32.    "**Final Approval Order**" means the final order the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and shall be substantially in the form attached as an exhibit to the Motion for Final Approval. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel or Service Awards to the Class Representatives.

33.    "**Defendant**" means Highgate Hotels, L.P.

34.    "**Defendant's Counsel**" means Casie D. Collignon and Keeley O. Cronin of Baker & Hostetler LLP.

35.    "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 2***, that shall be posted on the Settlement Website and shall be available to Settlement Class members by mail on request made to the Settlement Administrator.

36.    "**Motion for Final Approval**" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

37.  "**Motion for Preliminary Approval**" means the motion that Plaintiffs shall file with the court seeking Preliminary Approval of the Settlement.

38.  "**Net Settlement Fund**" means the amount of the Settlement Fund following payment of Settlement Administration Costs, and any attorneys' fees, costs, and Service Awards granted by the Court

39.  "**Notice**" means the Postcard Notice and Long Form Notice that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

40.  **"Notice Date"** means 30 days after the Court's entry of the Preliminary Approval Order.

41.  "**Notice Program**" means the methods provided for in this Agreement for giving Notice to the Settlement Class and consists of the Postcard Notice and Long Form Notice, along with the Settlement Website and the Settlement Class member toll-free telephone line.

42.  "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

43.  "**Objection Period**" means 60 days after the Notice Date and is the last day for a Settlement Class Member to object to the Settlement.

44.  **"Opt-Out Deadline"** means 60 days after the Notice Date and is the last day for a Settlement Class Member to opt-out of the Settlement.

45.  "**Party**" means each of the Plaintiffs and Defendant, and "Parties" means Plaintiffs and Defendant, collectively.

46.  "**Plaintiffs**" means Elena Bugaeva, Rachel Oliver, and Catherina Svoboda.

47.    "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as ***Exhibit 1***, that the Settlement Administrator shall disseminate to Settlement Class Members by mail.

48.    "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form submitted with the Motion for Preliminary Approval.

49.    "**Preliminary Approval Order**" means the order preliminarily approving the Settlement and proposed Notice Program.

50.    "**Private Information**" means some combination of Settlement Class Members' names, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, and/or health insurance information.

51.    "**Releases**" means the releases and waiver set forth in Section XIII of this Agreement.

52.    "**Released Claims**" means any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Incident.

53. "**Released Parties**" means Defendant and Defendant's past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, executives, partners, joint ventures, licensees, licensors, independent contractors, subrogees, principals, servants, divisions, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, ownership partners, executors, and trustees, and any other person acting on Defendant's behalf, in their capacity as such.

54. "**Releasing Parties**" means Plaintiffs and Settlement Class Members and their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

55. "**Service Awards**" means the payments the Court may award the Class Representatives.

56. "**Settlement Administrator**" means Epiq Class Action & Claims Solutions, Inc. or Epiq.

57. "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator regarding Notice and Settlement administration.

58. "**Settlement Class**" means all living individuals residing in the United States who received notice of the Data Incident. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff.

59.    "**Settlement Class Member**" means any member of the Settlement Class who has not opted-out of the Settlement.

60.    "**Settlement Class Member Benefit**" means the Cash Payment A or Cash Payment B option elected by Settlement Class Members.

61.    "**Settlement Fund**" means the non-reversionary $487,500.00 common fund that Defendant is obligated to fund under the terms of the Settlement.

62.    "**Settlement Website**" means the website the Settlement Administrator will establish as a means for Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Postcard Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for at least six months after Final Approval.

63.    "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of

the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

### III.    <u>Settlement Fund</u>

64.    Defendant agrees to make a payment of, and deposit that payment into the Settlement Fund as follows (1) Defendant shall pay $243,750.00 into the Settlement Fund within 30 days of Preliminary Approval Order; and (2) Defendant shall pay the remaining $243,750.00 into the Settlement Fund within 30 days of the Effective Date. In no event will Defendant pay more than $487,500.00 into the Escrow Account. Prior to initiating the initial $243,750.00 payment, the Settlement Administrator shall provide payment instructions, a W-9 and contact information to voice-verify the payment instructions to Defendant. In the event there is no Final Approval, with the exception of any outstanding invoices due to the Settlement Administrator, all funds remaining in the Settlement Fund shall be payable to Defendant.

65.    The Settlement Fund shall be used to pay: (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; (3) any attorneys' fees and costs awarded by the Court to Class Counsel; and (4) any Service Awards to the Class Representatives approved by the Court.

66.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Regulations § 1.468B-1at all times since creation of the Escrow Account. The funds in the Escrow Account shall earn a reasonable rate of interest and all interest shall before the benefit of the Settlement Class. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned  by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiffs, and/or Class Counsel with respect to income earned

by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including without limitation taxes payable by reason of any such indemnification).

### IV.    Certification of the Settlement Class

67.    In the Motion for Preliminary Approval, Plaintiffs shall propose and request to the Court that the Settlement Class be certified for Settlement purposes only. Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that the Action shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action in such event.

### V.    Settlement Consideration

68.    When submitting a Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash.  Settlement Class Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. If a Settlement Class Member does not submit

a Valid Claim, the Settlement Class Member will release his or her claims against the Released Parties without receiving a Settlement Class Member Benefit.

### a. Cash Payment A – Documented Losses

69.     Settlement Class Members may submit a claim for a Cash Payment under this section for a maximum of $3,500.00 per Settlement Class Member upon presentment of reasonable documented losses related to the Data Incident. To receive payment for documented losses, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third party or the Settlement Class member supporting a claim for expenses paid. Non-exhaustive examples of reasonable documentation include telephone records, correspondence including emails, or receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the Settlement Class member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be as if he or she elected Cash Payment B.

### b. Cash Payment B – Alternate Cash

70.     As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B – Alternate Cash, which is a flat-cash payment in the estimated amount of $100.00.

## VI.    Settlement Approval

71.     The Motion for Preliminary Approval shall, among other things, request the Court (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim Process; (5) approve the procedures for Settlement Class Members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) appoint Jeff Ostrow, Gary M. Klinger, and J. Gerard Stranch as Class Counsel for Settlement purposes; (7) appoint the Plaintiffs who sign this Agreement as Clas Representatives; (8) appoint Epiq as the Settlement Administrator; (9) stay the Action pending Final Approval of the Settlement; and (10) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's Counsel.

## VII.    Settlement Administrator

72.     The Parties agree that, subject to Court approval, Epiq shall be the Settlement Administrator. Class Counsel shall oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

73.     The Settlement Administrator shall administer various aspects of the Settlement as described in the following paragraph and perform such other functions as are specified for the

Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Settlement Class Member Benefits to those who submit Valid Claims.

74.    The Settlement Administrator's duties include the following:

a.    Provide CAFA Notice;

b.    Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice and sending out Long Form Notices and paper Claim Forms upon request from Settlement Class Members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

c.    Establish and maintain the Settlement Fund in the Escrow Account;

d.    Establish and maintain a post office box to receive opt-out requests, objections, and Claim Forms from Settlement Class Members;

e.    Establish and maintain the Settlement Website to provide important information and to receive electronic Claim Forms;

f.    Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

g.    Respond to any mailed Settlement Class member inquiries;

h.    Process all opt-out requests from Settlement Class members;

i.    Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of

Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

j.      In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class Member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

k.      Distribute Cash Payments from the Settlement Fund;

l.      Pay Court-approved attorneys' fees, costs, and Service Awards out of the Settlement Fund;

m.      Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and

n.      Any other Settlement administration function at the instruction of Class Counsel and Defendant's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

### VIII.   <u>Notice to the Settlement Class, Opt-Out Procedures, and Objection Procedures</u>

75.     Defendant will make available to the Settlement Administrator the Class List no later than 10 days after entry of the Preliminary Approval Order. To the extent necessary, Defendant will cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement.

16

76.     Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Postcard Notice will be sent by USPS mail.

77.     The Postcard Notice shall include, among other information, the following: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

78.     The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

79.     The Long Form Notice shall also include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class

Member may opt-out of the Settlement Class by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Deadline. The opt-out request must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Valid Claim.

80.     The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. Objections must be filed with the Court, and sent by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the Objection Deadline, as specified in the Notice, and the Settlement Class Member must not have excluded him/herself from the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

81.     For an objection to be considered by the Court, the objection must also set forth the following:

a.     the objector's full name, mailing address, telephone number, and email address (if any);

b.      all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.      the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.      the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards, and whether they will appear at the Final Approval Hearing;

e.      the number of times in which the objector's counsel and/or the objector's counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling on the objection issued by the trial and appellate courts in each such listed case;

f.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

g.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

h.      the objector's signature (an attorney's signature is not sufficient).

82.     Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel, including taking depositions and document production.

83.     The Settlement Administrator shall perform reasonable address traces for those Postcard Notices returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 60 days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class Members whose new addresses were identified as of that time through address traces.

84.     The Notice Program shall be completed in its entirety no later than 45 days before the original date set for the Final Approval Hearing.

### IX.     Claims Process and Disbursement of Cash Payments

85.     The Notice and the Settlement Website will explain to Settlement Class members that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

86.     Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

87.     The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

88.     The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form.

The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

89.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from the Claimant or deny the Claim, subject to the supervision of the Parties and ultimate oversight by the Court.

90.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Settlement Class Member using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the

Claimant's physical or e-signature. A Settlement Class Member shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent via mail and postmarked , whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Settlement Class Member timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Settlement Class Member does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendant's Counsel and Class Counsel otherwise agree.

91.     Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for the following reasons, among others:

a.     Failure to fully complete and/or sign the Claim Form;

b.     Illegible Claim Form;

c.     The Claim Form is fraudulent;

d.     The Claim Form is duplicative of another Claim Form;

e.     The Claimant is not a Settlement Class Member;

f.     The Claimant submitted a timely and valid request to opt-out of the Settlement Class;

g.     The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.     Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.     The Claim Form otherwise does not comply with the requirements of this Settlement.

92. The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

    a.    The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

    b.    A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this paragraph.

    c.    If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

    d.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

93. The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

94. No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

95.     No later than 75 days after Final Approval or 30 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

96.     Cash Payments to Settlement Class Members will be made electronically (Venmo, Zelle, or CashApp) or by paper check. Settlement Class Members with Valid Claims shall receive an email instructing them to select the type of payment they wish to receive. Upon issuance of the email, Settlement Class Members shall have 30 days to select their method of payment. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 180 days to negotiate the check.

## X.     Final Approval Order and Final Judgment

97.     Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court will also hear argument at the Final Approval Hearing from any Settlement Class Member (or their counsel) who objects to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in this Agreement.

98.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application

for Attorneys' Fees, Costs, and Service Awards. Such proposed Final Approval Order shall effectuate the following, among other things:

      a.     Determine that the Settlement is fair, adequate and reasonable;

      b.     Finally certify the Settlement Class for settlement purposes only;

      c.     Determine that the Notice Program satisfies Due Process requirements;

      d.     Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

      e.     Release Defendant and the Released Parties from the Released Claims; and

      f.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

**XI.**    **Service Awards, Attorneys' Fees and Costs**

99.    ***Service Awards*** – In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $2,000.00 each. If approved, the Service Awards shall be paid by the Settlement Administrator out of the Settlement Fund within 25 days of the Effective Date. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to Settlement Class Member Benefits.

100. ***Attorneys' Fees and Costs*** - Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and costs award approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel within 25 days of the Effective Date

101. This Settlement is not contingent on approval of Application for Attorneys' Fees, Costs, and Service Award, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees, costs, and Service Awards were not negotiated until after the Parties reached agreement on all material terms of the Settlement.

## XII.     Disposition of Residual Funds

102. In the event there are funds remaining in the Settlement Fund 180 days following the date Settlement Class Members are sent an email to select their form of payment, any residual shall be distributed to a mutually agreeable *cy pres* recipient to be approved by the Court.

## XIII.     Releases

103. Upon the Effective Date, and in consideration of the Settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and irrevocably released, acquitted, relinquished, and forever discharged the Released Parties from any and all Released Claims, and shall be forever barred from instituting, maintaining or prosecuting any and all liabilities, rights, claims, actions, causes of actions, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort, or

any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to the Data Incident that the Releasing Parties may have or had. Each Party expressly waives all rights under California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties also waive the provisions and rights of any law(s) that are comparable in effect to California Civil Code section 1542 (including, without limitation, California Civil Code § 1798.80, *et seq*., Montana Code Ann. § 28- 1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11). The Releasing Parties agree that, once this Agreement is executed, they will not, directly or indirectly, individually or in concert with another, maintain, cause to be maintained, or voluntarily assist in maintaining any further demand, action, claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever, against any of the Released Parties based on any of the Released Claims.

104.    Settlement Class Members who opt-out of the Settlement prior to the end of the Opt-Out Period do not release their claims and will not obtain any benefits, including any Settlement Class Member Benefits, under the Settlement.

105.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties,

whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

106.    The power to enforce any term of this Settlement is not affected by the releases in this section.

## XIV.    Termination of Settlement

107.    This Agreement shall be subject to, and is expressly conditioned on, the occurrence of all of the following events:

      a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

      b.    The Court has entered the Preliminary Approval Order;

      c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

      d.    The Effective Date has occurred.

108.    If any of the conditions specified in the preceding paragraph are not met, or if the Court otherwise imposes any modification to or condition of approval of the Settlement to which the Parties do not consent, then this Agreement shall be cancelled and terminated.

109.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the Parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other action

or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

110.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendant. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid. After payment of any Settlement Administration Costs that have been incurred and are due to be paid from the Settlement Fund, the Settlement Administrator shall return the balance of the Settlement Fund to Defendant within 21 days of termination.

## XV.    Effect of Termination

111.    The grounds upon which this Agreement may be terminated are in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendant's, and Defendant's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

112.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

## XVI.    No Admission of Liability

113.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession

of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

114.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

115.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

116.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may

be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

117.    In addition to any other defenses Defendant or the Released Parties may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

### XVII.  Miscellaneous Provisions

118.    *Confidentiality*. To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the negotiation and drafting of this Agreement. The Parties will not make any public statement about the Settlement that has not been approved by the other side, except as required or authorized by law. Approval of any proposed public statement of the other side will not be unreasonably withheld. The Parties will cooperate with each other regarding public statements about the Settlement and may issue a joint statement/press release if they mutually agree to do so. This paragraph shall not be construed to limit or impede the Notice requirements contained in this Agreement, nor shall this paragraph be construed to prevent Class Counsel or Defendant's Counsel from notifying or explaining that the Action has settled or limit the representations that the Parties or their counsel may make to the Court to assist in the Court's evaluation of the Settlement, Preliminary Approval, Final Approval, and any objection to the Settlement's terms. Defendant may also provide information about the Agreement to its customers, attorneys, members, partners, insurers, brokers, agents, and other persons or entities as required by securities laws, other applicable laws and regulations, and as necessary to effect the Settlement.

119. ***Gender and Plurals***. As used in this Agreement, the masculine, feminine, or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

120. ***Binding Effect.*** This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

121. ***Cooperation of Parties***. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

122. ***Obligation to Meet and Confer***. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

123. ***Integration and No Reliance***. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

124. ***No Conflict Intended.*** Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

125. ***Governing Law.*** Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of New York, without regard to the principles thereof regarding choice of law.

126.  **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.

127.  **Jurisdiction.** The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

128.  **Notices**. All notices provided for herein, shall be sent by email.

1.  If to Plaintiffs or Class Counsel:

> Jeff Ostrow
> **Kopelowitz Ostrow P.A.**
> 1 West Las Olas Blvd., Suite 500
> Fort Lauderdale, FL 33301
> ostrow@kolawyers.com

> Gary Klinger
> **Milberg Coleman Bryson**
> **Phillips Grossman PLLC**
> 227 W. Monroe Street, Suite 2100
> Chicago, IL 60606
> gklinger@milberg.com

> J. Gerard Stranch, IV

**Stranch, Jennings & Garvey, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com

2.   If to Defendant or Defendant's Counsel:

Casie D. Collignon
**Baker & Hostetler LLP**
1801 California Street, Suite 4400
Denver, CO 80202
ccollignon@bakerlaw.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

129.   *Modification and Amendment.* This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the Settlement has been approved preliminarily by the Court, as approved by the Court.

130.   *No Waiver.* The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

131.   *Authority.* Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

132.   *Agreement Mutually Prepared.* Neither Plaintiffs nor Defendant shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, common law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

133. ***Independent Investigation and Decision to Settle.*** The Parties understand and acknowledge (a) that they have performed an independent investigation of the allegations of fact and law made in connection with the Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, it will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with the Action pursuant to the terms of this Agreement now. Thus, in furtherance of the Parties' intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

134. <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement the Releases, and fully understands the effect of this Agreement and the Releases.

**CLASS COUNSEL (for Plaintiffs and the Settlement Class)**

*Jeffrey Ostrow*
Jeffrey Ostrow (Jul 7, 2025 07:58 EDT)

**JEFF OSTROW**
KOPELOWITZ OSTROW P.A.

Gary Klinger (Jul 7, 2025 07:03 CDT)

**GARY KLINGER**
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC

Gerard Stranch (Jul 7, 2025 07:19 CDT)

**J. GERARD STRANCH IV**
STRANCH JENNINGS & GARVEY, PLLC

**HIGHGATE HOTELS L.P.**

By: Larry R. Martinez
Its: Authorized Signatory

**HIGHGATE HOTELS LP'S COUNSEL**

**CASIE D. COLLIGNON**
BAKER HOSTETLER LLP

# EXHIBIT 1
# (POSTCARD NOTICE)

Highgate Hotels
Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

**BARCODE NO-PRINT ZONE**

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

Court-Approved Legal Notice
*Elena Bugaeva et al. v. Highgate Hotels, L.P.*,
Case No. 1:24-cv-10001, United States District
Court for the Southern District of New York

**If you were sent notice that your
Private Information may have been
impacted in the Data Incident
involving Highgate Hotels, L.P.,
discovered on or about March 26,
2024, you may be entitled to
Settlement Class Member Benefits
from a Settlement.**

*A Court has authorized this notice.
This is __not__ a solicitation from a lawyer.*

www.XXXXXXXXXXX.com

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A $4,875,000 settlement has been reached in a class action lawsuit against Highgate Hotels, L.P. ("Defendant") arising out of allegations that on or around March 26, 2024, Defendant detected unauthorized activity in its network that may have impacted Settlement Class Members' Private Information ("Data Incident").

**Who is Included?** You are part of the Settlement Class if you reside in the United States and were sent notice of the Data Incident that occurred in March 2024.

**What does the Settlement Provide?** As a Settlement Class Member, you can submit a Claim Form online or by mail postmarked by **Month XX, 20YY,** for the following Settlement Class Member Benefits:

**Cash Payment A – Documented Losses:** You may submit a Claim Form and provide reasonable documentation for losses related to the Data Incident for up to $3,500 per Settlement Class Member;
**OR**
**Cash Payment B – Alternate Cash:** Instead of Cash Payment A, you may submit a Claim Form to receive an alternate flat cash payment in the *estimated* amount of $100.

Your Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) increase or decrease depending upon the total value of all Valid Claims.

**Other Options**. If you do not want to be legally bound by the Settlement, you must submit an opt-out **postmarked** by **Month XX, 20YY**. If you do not opt-out, you will give up the right to sue and will release the Defendant and Released Parties about the legal claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards by **Month XX, 20YY**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees and costs of up to 1/3 of the Settlement Fund, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary. Learn more about the Settlement** at www.XXXXX.com, or by calling toll free 1-XXX-XXX-XXX.

<<UNIQUE ID>>

---

# CLAIM FORM
**Claims must be postmarked or submitted online no later than Month Day, 20YY.**

First Name:
MI:
Last Name:

Mailing Address:

City:
State:
ZIP Code:

**Cash Payment A – Documented Losses:** If you are a Settlement Class Member, you may submit a timely and valid Claim Form with reasonable documentation for losses related to the Data Incident for up to $3,500 per Settlement Class Member. You must provide documentation showing you spent money or incurred losses related to the Data Incident. To file a Claim Form for Cash Payment A, you must visit the Settlement Website and follow the instructions on the Claim Form. You can also download a paper Claim Form and file by mail.

**Cash Payment B – Alternate Cash:** Instead of selecting Cash Payment A, you may submit a Claim Form to receive an alternate flat cash payment in the *estimated* amount of $100. Your Cash Payment may be subject to a *pro rata (*a legal term meaning equal share) increase or decrease depending upon the total value of all Valid Claims.

[ ] By checking this box, I affirm I want to receive the alternate cash payment.

**By signing my name, I swear and affirm I am completing this Claim Form to the best of my personal knowledge.**

**Signature:**

NO-PRINT ZONE

PLACE STAMP HERE

Highgate Hotels
Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

# EXHIBIT 2
# (LONG FORM NOTICE)

# If your Private Information was impacted in the Data Incident involving Highgate Hotels, L.P., discovered on or about March 26, 2024, and you were sent notice, you may be entitled to Settlement Class Member Benefits from a Settlement.

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A $487,500 settlement has been reached in a class action lawsuit against Highgate Hotels, L.P., ("Defendant"). The litigation arises out of allegations that on or about March 26, 2024, Defendant detected unauthorized activity in its network that may have impacted the Private Information of current and former employees. The Private Information may have included some combination of Settlement Class Members' names, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, and/or health insurance information.

- The Settlement Class includes: all living individuals residing in the United States who received notice of the Data Incident.

- If you are a member of the Settlement Class, you can submit a Claim Form for the following Settlement Class Member Benefits:

  **Cash Payment A – Documented Losses:** You may submit a Claim Form and provide reasonable documentation for losses related to the Data Incident for up to $3,500 per Settlement Class Member;
  **OR**
  **Cash Payment B – Alternate Cash:** Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternate cash payment in the *estimated* amount of $100.

  Your Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) increase or decrease depending upon the total value of all Valid Claims submitted.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights & Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | The only way to get Settlement Class Member Benefits is to submit a timely and valid Claim Form. | Submitted or Postmarked by: **MONTH DD, 20YY** |
| **Exclude Yourself** | Get no Settlement Class Member Benefits. Keep your right to file your own lawsuit against the Released Parties about the Released Claims that are released by the Settlement in this lawsuit. | Postmarked by: **MONTH DD, 20YY** |
| **Object to the Settlement** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Filed by: **MONTH DD, 20YY** |
| **Do Nothing** | Get no Settlement Class Member Benefits. Give up your legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.
- The Court must decide whether to approve the Settlement, attorneys' fees, costs, and Service Awards. No Settlement Class Member Benefits will be provided unless the Court approves the Settlement.

## BASIC INFORMATION

## 1. Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant Dinal Approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what Settlement Class Member Benefits are available, who is eligible for the Settlement Class Member Benefits, and how to get them.

The Honorable Vernon S. Broderick of the United States District Court for the Southern District of New York is overseeing this class action. The lawsuit is known as *Elena Bugaeva et al. v. Highgate Hotels, L.P.*, Case No. 1:24-cv-10001 ("lawsuit"). The individuals who filed this lawsuit are called the "Plaintiffs" and/or "Class Representatives" and the company sued, Highgate Hotels, L.P., is called the "Defendant."

## 2. What is this lawsuit about?

The Plaintiffs filed this lawsuit against the Defendant on behalf of themselves and all others similarly situated. The Plaintiffs allege that on or about March 26, 2024, the Defendant discovered unauthorized activity in its network that may have involved the Private Information of current and former employees. The Private Information may have included some combination of Settlement Class members' names, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, and/or health insurance information.

Defendant denies the legal claims and denies any wrongdoing or liability. The Court has not made any determination of any wrongdoing by Defendant, or that any law has been violated. Instead, the Plaintiffs and Defendant have agreed to a settlement to avoid the risk, cost, and time of continuing the lawsuit.

## 3. Why is there a Settlement?

The Plaintiffs and Defendant do not agree about the legal claims made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided in favor of the Plaintiffs or Defendant. Instead, the Plaintiffs and Defendant have agreed to settle the lawsuit. The Class Representatives, Defendant, and their lawyers believe the Settlement is best for the Settlement Class because of the Settlement Class Member Benefits available and the risks and uncertainty associated with continuing the lawsuit.

## 4. Why is this lawsuit a class action?

In a class action, one or more people (called class representatives) sue on behalf of all people who have similar legal claims. Together, all these people are called a class or class members. One court resolves the issues for all class members, except for those class members who timely exclude themselves (opt-out) from the class.

# WHO IS INCLUDED IN THE SETTLEMENT?

## 5. How do I know if I am included in the Settlement?

You are included in the Settlement Class if you are a living individual residing in the United States who received notice of the Data Incident.

Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX

2

### 6.  Are there exceptions to being included in the Settlement?

Yes. Excluded from the Settlement Class are: (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge assigned to the lawsuit, the Judge's immediate family, and Court staff.

### 7.  What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Settlement Class member, you may go to www.XXXXXXXXXXX.com or call toll-free 1-XXX-XXX-XXXX.

# THE SETTLEMENT BENEFITS

### 8.  What does this Settlement provide?

If you are a Settlement Class Member, you can submit a Claim Form for the following Settlement Class Member Benefits:

**Cash Payment A – Documented Losses**

You may submit a Claim Form with reasonable documentation for losses related to the Data Incident for up to $3,500 per Settlement Class Member.

Examples of expenses incurred as a result of the Data Incident, include (without limitation) bank fees, long distance phone charges, cell phone charges (only charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel and fees for credit reports, credit monitoring, or other identity theft insurance products purchased.

Examples of reasonable documentation include (but are not limited to): telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by the Defendant or otherwise.

If you do not submit reasonable documentation supporting a loss, or if your Claim Form is invalid as determined by the Settlement Administrator, and you do not cure your Claim Form, your Claim Form will be denied and your Claim Form for Cash Payment A will instead be processed as if you elected Cash Payment B.

**Cash Payment B – Alternate Cash**

Instead of selecting Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternate cash payment in the estimated amount of $100.

Your Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) increase if the amount of Valid Claims does not use the entire Net Settlement Fund. Alternatively, if the amount of Valid Claims exceeds the amount of the Net Settlement Fund, your Cash Payment may be subject to a *pro rata* reduction.

Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis.

**Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX**

3

### 9. What am I giving up to receive Settlement Class Member Benefits or stay in the Settlement Class?

Unless you exclude yourself (opt-out), you will remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties about the Released Claims in this lawsuit. The specific rights you are giving up are called "Released Claims."

### 10. What are the Released Claims?

Section XIII of the Settlement Agreement describes the Releases, Released Claims, and Released Parties, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.XXXXXXXXXXX.com. For questions regarding the Releases, Released Claims, or Released Parties and what the language in the Settlement Agreement means, you can also contact Class Counsel listed below for free, or you can talk to your own lawyer at your own expense.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

### 11. How do I submit a Claim Form?

You must submit a timely and valid Claim Form to receive any Settlement Class Member Benefits as described above. Your Claim Form must be submitted online at www.XXXXXXXXX.com by **MONTH DD, 20YY**, or mailed to the Settlement Administrator at the address on the Claim Form, **postmarked** by **Month DD, 20YY**. Claim Forms are also available at www.XXXXXXXXX.com or by calling 1-XXX-XXX-XXXX or by writing to:

*Highgate Hotels*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

### 12. What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*Highgate Hotels*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

### 13. When will I receive my Settlement Class Member Benefits?

If you file a timely and valid Claim Form, the Settlement Class Member Benefits will be provided after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXX.com for updates.

# EXCLUDE YOURSELF OR OPT-OUT OF THE SETTLEMENT

If you are a member of the Settlement Class and want to keep any right you may have to sue or continue to sue the Released Parties on your own about the legal claims in this lawsuit or the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

## 14. How do I opt-out of the Settlement?

To exclude yourself from the Settlement, you must mail a written request for exclusion, which includes the following:

1) Your name, address, telephone number, and email address (if any);
2) Your personal physical signature; and
3) A statement that you want to be excluded from the Settlement Class, such as "I hereby request to be excluded from the Settlement Class in *Bugaeva et al. v. Highgate Hotels.*"

The exclusion request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 20YY**:

*Highgate Hotels*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**You cannot opt-out (exclude yourself) by telephone or by email.**

"Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Settlement Class members or multiple Settlement Class members where the opt-out has not been signed by each and every individual Settlement Class member will not be allowed.

## 15. If I opt-out can I still get anything from the Settlement?

No. If you opt-out, you will not be able to receive Settlement Class Member Benefits, and you will not be bound by the Settlement or any judgments in this lawsuit. You can only get Settlement Class Member Benefits if you stay in the Settlement and submit a timely and valid Claim Form.

## 16. If I do not opt-out, can I sue the Defendant for the same thing later?

No. Unless you opt-out, you give up any right to sue any of the Released Parties for the legal claims this Settlement resolves and Releases, and you will be bound by all the terms of the Settlement, proceedings, orders, and judgments in the lawsuit. You must opt-out of this lawsuit to start or continue your own lawsuit or be part of any other lawsuit against the Released Parties about the Released Claims in this Settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.

# OBJECTING TO THE SETTLEMENT

## 17. How do I tell the Court I do not like the Settlement?

If you are a Settlement Class member, you can tell the Court you do not agree with all or any part of the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards.

To object, you must file your timely written objection with the Court as provided below by **MONTH DD, 20YY**, <u>and</u> send by U.S. mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, stating you object to the Settlement in *Elena Bugaeva et al. v. Highgate Hotels, L.P.*, Case No. 1:24-cv-10001.

To file an objection, you cannot exclude yourself from the Settlement Class. Your objection must include all of the following information:

1) Your full name, mailing address, telephone number, and email address (if any);
2) All grounds for the objection, accompanied by any legal support for the objection known to you as the objector or your own lawyer;
3) The number of times you have objected to a class action settlement within the five (5) years preceding the date that you file the objection, the caption of each case in which you have made such objection, and a copy of any orders related to or ruling upon your prior objections that were issued by the trial and appellate courts in each listed case;
4) The identity of all lawyers representing you in connection with the objection (if any), including any former or current lawyers who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards and whether they will appear at the Final Approval Hearing;
5) The number of times your lawyer or your lawyer's law firm have objected to a class action settlement within the five (5) years preceding the date of the filed objection, the caption of each case in which your lawyer or the firm has made such objection and a copy of any orders related to or ruling upon your lawyer's or the lawyer's law firm's prior objections that were issued by the trial and appellate courts in each listed case;
6) A list of all persons who will be called to testify at the Final Approval Hearing in support of your objection (if any);
7) A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and
8) Your signature as the objector (a lawyer's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's lawyer. This includes taking depositions and document production.

To object, you must file your timely written objection with the Court by **MONTH DD, 20YY**, <u>and</u> send it by U.S. mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, at the following addresses:

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| Clerk U.S. District Court Southern District of New York 500 Pearl Street New York, NY 10007 | Jeff Ostrow Kopelowitz Ostrow P.A. 1 West Las Olas Blvd. Suite 500 Fort Lauderdale, FL 33301<br><br>Gary Klinger Milberg Coleman Bryson Phillips & Grossman PLLC | Casie D. Collignon Keeley O. Cronin Baker & Hostetler LLP 1801 California Street Suite 4400 Denver, CO 80202 | Highgate Hotels Settlement Administrator PO Box xxxx Portland, OR 972xx-xxxx |

**Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX**

6

| | 227 W. Monroe Street<br>Suite 2100<br>Chicago, IL 60606<br><br>J. Gerard Stranch, IV<br>Stranch, Jennings &<br>Garvey PLLC<br>223 Rosa L. Parks<br>Avenue<br>Suite 200<br>Nashville, TN 37203 | | |

## 18. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Opting-out is telling the Court that you do not want to be part of the Settlement Class. If you opt-out, you cannot object because you are no longer part of the Settlement.

# THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in the lawsuit?

Yes. The Court has appointed Jeff Ostrow of Kopelowitz Ostrow P.A., Gary Klinger of Milberg Coleman Bryson Phillips & Grossman PLLC, and J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost if you want someone other than Class Counsel to represent you in this lawsuit.

## 20. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award the attorneys' fees and costs of up to 1/3 of the Settlement Fund. Class Counsel will also ask the Court to approve the Service Awards for the Class Representatives of up to $2,000 each for their efforts. If awarded by the Court, the attorneys' fees and costs, and the Service Awards will be paid from the Settlement Fund. The Court may award less than these amounts.

# THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. You may attend and you may ask to speak if you file an objection by the deadline, but you do not have to.

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY, at XX:XX a.m./p.m.** before the Honorable Vernon S. Broderick at the Daniel Patrick S. Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007 or by telephone or video conference. At this hearing, the Court

will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards.

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely objection, and you (or your lawyer) ask to speak at the hearing, the Court, at its discretion, may hear objections at the hearing.

**Note:** The date and time of the Final Approval Hearing are subject to change without further notice to the Settlement Class. You should check the Settlement Website www.XXXXXXXXX.com to confirm the date and time of the Final Approval Hearing have not changed.

## 22. Do I have to attend the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file your written objection by the deadline, the Court will consider it.

## 23. May I speak at the Final Approval Hearing?

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely objection, and you (or your lawyer) ask to speak at the hearing, the Court, at its discretion, may hear objections at the hearing.

# GET MORE INFORMATION

## 24. How do I get more information about the Settlement?

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXXX.com. You may get additional information at www.XXXXXXXXXXX.com, by calling toll-free 1-XXX-XXX-XXXX, or by writing to:

*Highgate Hotels*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

# EXHIBIT 3
# (CLAIM FORM)

<table>
<tr><td>

**Must be postmarked or submitted online NO LATER THAN [DATE]**

</td><td>

*Highgate Hotels*
SETTLEMENT ADMINISTRATOR
P.O. BOX XXXX
PORTLAND, OR XXXXX-XXXX
www.XXXXXXXXX.com

</td></tr>
</table>

## *Elena Bugaeva v. Highgate Hotels, L.P.,* Claim Form
### Case No. 1:24-cv-10001

### GENERAL INFORMATION

If you received Notice of this Settlement, you may be a member of the Settlement Class. You are a member of the Settlement Class if you received notice that your Private Information may have been impacted in a March 2024 data incident wherein Highgate Hotels ("Defendant") detected unauthorized activity in its network that may have impacted the Private Information of current and former employees (the "Data Incident"). The Private Information involved may include some combination of Settlement Class Members' names, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, and/or health insurance information.

You may submit a Claim Form for Settlement Class Member Benefits, outlined below, by visiting the Settlement Website at www.XXXXXXXXX.com. **Claims must be submitted online or mailed by [DATE]. If you would prefer to submit by mail, please use the address at the top of this form.**

### SETTLEMENT BENEFITS – WHAT YOU MAY GET

**You may submit a Claim for one of the Cash Payment options:**

1. **Cash Payment A – Documented Losses:** You may submit a Claim Form and provide reasonable documentation for losses related to the Data Incident for up to $3,500 per Settlement Class Member. Supporting documentation is required.

   **OR**

2. **Cash Payment B – Alternate Cash:** Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternate cash payment in the estimated amount of $100.

   The actual amount of your Cash Payment (A or B) will be determined based on the amount remaining in the Settlement Fund, if any, after the payment of Settlement Administration Costs, any attorneys' fees and costs awarded by the Court, and Service Awards to the Class Representatives approved by the Court.. The amount may increase or decrease equally and will be *pro rata* based upon the total value of all Valid Claims received.

   \*      \*      \*

   *Please note: the Settlement Administrator may contact you to request additional documents to process your Claim.*

   For more information and complete instructions visit **www.XXXXXXXXX.com**

**Please note that Settlement Class Member Benefits will be distributed after the Settlement is approved by the Court and becomes final.**

MAIL ID

*0000PLACEHOLDER0000*

## Contact Information

**1. NAME (REQUIRED):**

First Name

MI

Last Name

**2. MAILING ADDRESS (REQUIRED):**

Street Address

Apt. No.

City

State

ZIP Code

**3. PHONE NUMBER:**

**4. EMAIL ADDRESS:**

**5. UNIQUE ID:**

Questions? Go to **www.XXXXXXXXX.com** or call **1-XXX-XXX-XXXX**

MAIL ID
*0000PLACEHOLDER0000*

## Cash Payment A – Documented Losses

If you lost or spent money relating to the Data Incident and have not been reimbursed for that loss/expenses, you can receive reimbursement for up to $3,500 total. Eligible losses include those incurred on or after March 26, 2024, up to the date of filing your Claim.

It is important for you to send reasonable documents that show what happened and how much you lost or spent so that you can be reimbursed. "Self-prepared" documents like handwritten receipts, personal certifications, declarations, or affidavits prepared by you are insufficient for reimbursement but can be used to add clarity, context, or support for other submitted reasonable documentation.

To look up more details about how the Cash Payments work, visit **www.XXXXXXXXX.com** or call toll-free **1-XXX-XXX-XXXX**. Please also review the Long Form Notice on the Settlement Website, which provides examples of what documents you need to attach and the types of expenses that can be claimed. *By filling out the boxes below, you are certifying that the money you spent doesn't relate to other data incidents or breaches.*

| Expense Type and Examples of Documents | Amount and Date | Description of Expense or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Incident) |
|---|---|---|
| Professional fees incurred to address identity theft or fraud, such as falsified tax returns, account fraud, and/or medical-identity theft. *Examples: Receipts, notices, or account statements reflecting payment for a credit freeze* | $ [ ][ ][ ][ ] . [ ][ ]  Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]  MM       DD       YYYY | _____ _____ _____ |
| Other losses or costs resulting from identity theft or fraud (provide detailed description) fairly traceable to the Data Incident. *Examples: Account statement with unauthorized charges circled; bank fees, and fees for credit reports, credit monitoring, or other identity theft insurance products purchased* | $ [ ][ ][ ][ ] . [ ][ ]  Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]  MM       DD       YYYY | _____ _____ _____ |
| Other expenses such as notary, fax, postage, copying, mileage, long-distance telephone charges, or professional fees related to the Data Incident. *Examples: Phone bills, receipts, detailed list of addresses you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled* | $ [ ][ ][ ][ ] . [ ][ ]  Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]  MM       DD       YYYY | _____ _____ _____ |

Questions? Go to **www.XXXXXXXXX.com** or call **1-XXX-XXX-XXXX**

Page 3

MAIL ID
*0000PLACEHOLDER0000*

## Cash Payment B – Alternate Cash

Instead of Cash Payment A, without providing documentation, you may elect to receive an Alternate Cash payment, *estimated* to be $100. Your Alternate Cash payment may be subject to a *pro rata* (a legal term meaning equal share) adjustment based upon the total value of all Valid Claims and other approved Settlement Fund deductions.

☐ **By checking this box, I affirm I want to receive an Alternate Cash payment under Cash Payment B.**

## Signature

I affirm under the laws of the United States that the information I have supplied in this Claim Form and any copies of documents that I am sending to support my Claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my Claim is complete.

_____
Signature

Date: ☐☐ – ☐☐ – ☐☐☐☐
MM     DD     YYYY

_____
Print Name

Questions? Go to **www.XXXXXXXXX.com** or call **1-XXX-XXX-XXXX**

Page 4